IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| vs. | ) CRIM. ACT. NO. 1:23-cr-126-TFM |
| | ) |
| HASSAN D. JONES | ) |
| | ) |

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant's *Motion to Dismiss on Second Amendment Grounds* (Doc. 30, filed 9/15/23). The United States filed its response in opposition (Doc. 40, filed 9/29/23). Defendant filed a reply (Doc. 50, filed 10/17/23). The Court held a hearing on the matter and orally denied the motion (Doc. 52) with a written opinion to follow. This is that opinion and upon consideration of the motion, response, reply, and relevant law, for the reasons set forth below, the motion is **DENIED**.

I. **BACKGROUND AND MOTION**

On June 28, 2023, Defendant Jones was indicted with five separate counts returned by the Grand Jury. *See* Doc. 1. Count Three charges Defendant with possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(B)(ii). Count Four charges Defendant with possession of a firearm by a prohibited person (felon) in violation of 18 U.S.C. § 922(g)(1). Count Five charges possession of an unregistered firearm in violation of 26 U.S.C. § 5861(d).[1]

---

[1] Subsequent to the Court's hearing and oral ruling on the motion to dismiss, the Grant Jury returned a superseding indictment on October 25, 2023. *See* Doc. 59. Counts Three, Four, and Five remained the same in that they charged violations of the same statutes previously asserted. As such, the motion to dismiss was not rendered moot and the need for this written opinion remains.

Rule 12(b)(3) of the Federal Rules of Criminal Procedure permits a defendant to request pre-trial dismissal of charges where there exists "a defect in the indictment," such as "an infirmity of law in the prosecution." *United States v. Torkington*, 812 F.2d 1347, 1354 (11th Cir. 1987).

The motion to dismiss asserts a facial constitutional challenge arguing that after *New York State Rifle & Pistol Association, Inc. v. Bruen*, --- U.S. ---, 142 S. Ct. 2111 (2022), the Court announced a "text-and-history test" for analyzing Second Amendment challenges. *See* Doc. 30 at 3-10. Jones argues that all three statutes fail in that analysis though he does spend most of his motion focusing on the challenge to § 922(g)(1). *Compare id.* at 10-38 *with id.* at 38-41 (discussing § 924(c) and § 5861(d)).

The United States filed a response in opposition to the motion to dismiss. *See* Doc. 40. The response first asserts that the Second Amendment protects law-abiding citizens and not felons. Regarding the challenge against § 922(g)(1), the United States next argues that the Eleventh Circuit's binding precedent for *United States v. Rozier*, 598 F.3d 768 (11th Cir. 2010) has not be overruled or abrogated. Finally, the United States says that § 922(g)(1) is consistent with traditional regulations as early governments had broad latitude to punish felons and could disarm dangerous or unvirtuous citizens. *Id*. at 5-12. Turning to § 924(c)(1)(B)(ii), the United States first argues that the *Bruen* analysis does not apply to the statute because § 924(c)(1)(B) does not impact a citizen's ability to carry a firearm for self-defense. Instead, it criminalizes the carrying of a firearm to carry out certain serious crimes. Put differently, Congress in the passage of the statute targeted criminal activity, not lawful self-defense. Alternatively, § 924(c) still passes scrutiny even if analyzed using the *Bruen* analysis. *Id*. at 12-14. Finally, the United States argues that § 5861(d) does not trigger *Bruen* scrutiny because it does not regulate a protected Second Amendment activity. *Id*. at 15. More specifically, it merely requires the registration of

certain firearms that are often used for criminal purposes. *Id*. Alternatively, it also argues that the application of § 5861(d) to the Glock switch satisfies *Bruen* because they are dangerous devices often used for criminal purposes. *Id*.

Jones also submitted his reply. reiterating his challenges under the "text-and-history" test.[2] *See* Doc. 50. Jones further discusses that certain dicta from the Supreme Court is not controlling and *Bruen* has overruled and abrogated Eleventh Circuit caselaw on § 922(g)(1). The reply again focuses the majority of its discussion on § 922(g)(1) with little time spent on § 924(c) and § 5861(d).

The Court held a hearing on multiple defense motions on October 18, 2023 and addressed this motion as part of that hearing. The Court orally denied the motion (Doc. 52).[3]

Subsequently, the Grand Jury returned a superseding indictment. *See* Doc. 59. Though the superseding indictment is the controlling document as of October 25, 2023, the Court finds that the arguments raised by Defendant in his original motion to dismiss are not rendered moot and still present a live controversy because the charges implicate the same statutes: 28 U.S.C. § 924(c)(1)(B)(ii), 18 U.S.C. § 922(g)(1), and 26 U.S.C. § 5861(d). As such, the Court still issues

---

[2] While the reply is sixty (60) pages on the PDF document filed, it appears to have been inadvertently largely duplicated. A comparison of pages 1-30 shows that pages 31-60 seem to be virtually identical in their analysis with the distinctions being formatting and roman numerals continuing their automatic numbering until the final pages. Page 29 and page 57 are where the distinctions begin. Pages 29 and 57 both include a section entitled "The government's remaining arguments hold no water." However, the one beginning on page 29 is longer and more robust while the one on page 57 appears to be shortened. However, the motion analysis ends with that section on page 30 while page 57 continues with an analysis of § 924(c) followed by an analysis of § 5861(d). As such, the Court has reviewed the document in its entirety to ensure a comprehensive review.

[3] The Court also issued an oral order (Doc. 51) on the Motion to Suppress (Doc. 28) addressed at the same hearing. No written opinion will be issued on that matter as the Court orally provided the full basis from the bench for its ruling on the search and seizure issue.

this written opinion and relates it to a challenge under either indictment.

## II. DISCUSSION AND ANALYSIS

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In 2008, the Supreme Court issued an opinion in which it held that the Second Amendment protects an individual's right to keep and bear arms for the purpose of self-defense. *District of Columbia v. Heller*, 554 U.S. 570 (2008). In 2010, the Supreme Court then held that the Fourteenth Amendment's due process clause incorporates the Second Amendment right recognized in *Heller*, making it enforceable against the states. *McDonald v. City of Chicago*, 561 U.S. 742 (2010).

After *Heller* and *McDonald*, many circuits (including the Eleventh Circuit) employed a two-step framework: "first, we ask if the restricted activity is protected by the Second Amendment in the first place; and then, if necessary, we . . . apply the appropriate level of scrutiny." *United States v. Focia*, 869 F.3d 1269, 1285 (11th Cir. 2017) (citation omitted).

*Bruen*, 142 S. Ct. 2111, upended the second part of that framework by finding it was "one step too many." 142 S. Ct. at 2127. The Court held:

> Step one of the predominant framework is broadly consistent with Heller, which demands a test rooted in the Second Amendment's text, as informed by history. But Heller and McDonald do not support applying means-end scrutiny in the Second Amendment context. Instead, the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms.

*Id*. Thus, when analyzing Second Amendment challenges to firearm regulations, courts must first determine whether "the Second Amendment's plain text covers an individual's conduct[.]" *Id*. at 2129-30. If so, "the Constitution presumptively protects that conduct[,]" and "[t]he government must then justify its regulation by demonstrating that it is consistent with the Nation's historical

tradition of firearm regulation." *Id*.

A.      Count Four – 18 U.S.C. § 922(g)(1)

Both parties placed their emphasis of their analysis on Count Four which charges Defendant with possession of a firearm by a prohibited person (felon) in violation of 18 U.S.C. § 922(g)(1). Jones argues that 18 U.S.C. § 922(g)(1) is unconstitutional because the statute violates the Second Amendment to the United States' Constitution.

In *United States v. Rozier*, 598 F.3d 768 (11th Cir. 2010), the Eleventh Circuit rejected a Second Amendment challenge to 18 U.S.C. § 922(g)(1). An Eleventh Circuit holding is binding "unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by [the Eleventh Circuit] sitting *en banc*." *United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008). To overrule Eleventh Circuit precedent, a Supreme Court ruling must be "clearly on point." *Garrett v. Univ. of Ala. at Birmingham Bd. of Trs.*, 344 F.3d 1288, 1292 (11th Cir. 2003). Importantly, the Supreme Court did not overrule *Heller* or *McDonald*. *Bruen*, 142 S. Ct. at 2129-30. Rather, the Supreme Court stated that the lower courts had misinterpreted both cases when they applied means-end scrutiny in a Second Amendment context and instead only clarified the standard as opposed to creating a new one. *Id*.

The Eleventh Circuit issued *Rozier* after the issuance of *Heller*. Further, in *Heller*, the Supreme Court, while it did not consider § 922(g)(1), did state:

> Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on *longstanding prohibitions* on the *possession of firearms by felons* and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.

*Heller*, 554 U.S. at 626-27 (emphasis added). The Supreme Court stated that these regulatory measures were "presumptively lawful." *Id*. at 627 n. 26. In *Rozier*, the Court held "statutory

restrictions of firearm possession, such as § 922(g)(1), are a constitutional avenue to restrict the Second Amendment right of certain classes of people. Rozier, by virtue of his felony conviction, falls within such a class." Rozier, 598 F.3d at 771; *cf. United States v. White*, 593 F.3d 1199, 1205 (11th Cir. 2010) (recognizing § 922(g)(1) as "presumptively lawful"). Further, in *Rozier*, the Eleventh Circuit did not discuss the second "means end scrutiny" step overturned by *Bruen*. Moreover, by reaffirming and adhering to its reasoning in *Heller* and *McDonald* the Supreme Court in *Bruen*, did not change the regulatory framework that prohibits felons from possessing firearms. Throughout the *Bruen* decision, the Supreme Court repeatedly references "law-abiding" citizens. *See, e.g., Bruen*, 142 S. Ct. at 2131 ("The Second Amendment . . . 'surely elevates above all other interests the right of *law-abiding, responsible citizens* to use arms' for self-defense.") (emphasis added) (quoting *Heller*, 554 U.S. at 635); *id*. at 2134 ("It is undisputed that petitioners Koch and Nash—two ordinary, *law-abiding, adult citizens*—are part of 'the people' whom the Second Amendment protects.") (emphasis added); *id*. at 2156 ("New York's proper-cause requirement violates the Fourteenth Amendment in that it prevents *law-abiding citizens* with ordinary self-defense needs from exercising their right to keep and bear arms.") (emphasis added).

Consequently, *Rozier* is still good law, this Court must apply it, and § 922(g)(1) is constitutional. Therefore, Defendant Jones' argument fails and the motion to dismiss must be denied as to § 922(g)(1).

**B.     Count Three – 18 U.S.C. § 924(c)(1)(B)(ii)**

Count Three charges Defendant with possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(B)(ii). Specifically, it states: "If the firearm possessed by a person convicted of a violation of this subsection…is a machinegun or a destructive device, or is equipped with a firearm silencer or firearm muffler, the person shall be

sentenced to a term of imprisonment of not less than 30 years." § 924(c)(1)(B)(ii). In short, it imposes enhanced penalties on a person convicted of the violation.

In his short section challenging § 924(c) (Doc. 30 at 38-39), Jones cites no support for his position beyond the general reliance on *Bruen* and its analysis requiring a "distinctly similar" historical regulation. Put a different way, Defendant argues that the dispositive question is whether § 924(c)'s prohibition against the possession of a firearm in furtherance of a drug trafficking crime comports with the historical tradition of firearm regulation.

Much like the analysis in the prior section on § 922(g), the crux of the issue is the possession of a firearm by a law-abiding citizen. A violation of § 924(c) relates to the use or possession of a firearm during the commission of a crime of violence or drug trafficking crime – which is by its very definition is a crime and not lawfully protected activity. *See McDonald v. City of Chicago*, 561 U.S. 742, 780, 130 S. Ct. 3020, 177 L. Ed. 2d 894 (2010) (describing the "central holding in *Heller*" as follows: "the Second Amendment protects a personal right to keep and bear arms for lawful purposes").

The Eleventh Circuit also previously rejected challenges to § 924(c) in *United States v. Thornton*, 395 F. App'x 574 (11th Cir. 2010).[4] This Court acknowledges that *Thornton* decided the issue under a plain error review (as opposed to a *de novo* review) and that it is an unpublished decision issued prior to *Bruen*, but the Court also finds that the analysis is still persuasive and other courts have reached the same conclusion that § 924(c) does not violate the Second Amendment. *See, e.g., United States v. Nevens*, Crim. Act. No. 19-774, 2022 U.S. Dist. LEXIS 222892, 2022

---

[4] In this Circuit "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2 (effective Dec. 1, 2014); *see also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 12264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

WL 17492196, at *2 (C.D. Cal. Aug. 15, 2022) ("Defendant is not a law-abiding citizen, and regulations governing *non-law abiding citizens*' use of firearms do not implicate *Bruen* and *Heller*." (emphasis in original)); *Ricks v. United States*, Crim Act. No. 1:06-cr-206, 2013 U.S. Dist. LEXIS 105251, at *15, 2013 WL 3894913, at *5 (W.D. Tex. July 26, 2013) ("Every Circuit that has addressed the issue, has found that § 924(c)(1) does not violate the Second Amendment since the Second Amendment only protects the right to bear and keep arms for lawful purposes and the furtherance of a drug trafficking crime is clearly not a lawful purpose.") (collecting citations). As noted by the Court in *United States v. Ingram*, 623 F. Supp. 3d 660 (D.S.C. 2022) in discussing § 922(c):

> To recap, similar discussion regarding felon-in-possession and comparable statutes appears in three different opinions: *Heller*, *McDonald*, and *Bruen*. By distinguishing non-law-abiding citizens from law-abiding ones, the dicta in *Heller* and *McDonald* clarifies the bounds of the plain text of the Second Amendment. This, coupled with the majority's focus in *Bruen* on the Second Amendment rights of "law-abiding citizens" throughout the opinion convinces this Court that the Supreme Court would conclude that these statutes fail to infringe on any Second Amendment rights. *See Bruen*, 142 S. Ct. at 2134 ("It is undisputed that petitioners Koch and Nash—two ordinary, law-abiding, adult citizens—are part of 'the people' whom the Second Amendment protects"); *id*. at 2156 ("New York's proper-cause requirement violates the Fourteenth Amendment in that it prevents law-abiding citizens with ordinary self-defense needs from exercising their right to keep and bear arms."). The Court has found no contradictory authority.
>
> …
>
> And, although the Supreme Court cases explained above fail to explicitly mention Section 924(c), the rationale also applies to that statute in equal or greater measure. *Heller* and its progeny emphasize that the enumerated list "presumptively lawful" regulatory measures is inexhaustive. *Heller*, 554 U.S. at 627 n. 26. Therefore, because it prohibits the use of firearms by non-law-abiding citizens for unlawful purposes, such conduct is also unprotected by the Second Amendment.

*Id*. at 664.

Defendant cites no authority, nor can this Court find that *Bruen* casts doubt upon Congressional authority to criminalize the use or possession of certain weapons (including

firearms) for an <u>unlawful</u> purpose as alleged here. Therefore, the Court finds that the *Bruen* test is inapplicable here and the motion to dismiss as to the § 924(c) challenge is also denied.

C.     **Count Five – 26 U.S.C. § 5861(d)**

Count Five charges possession of an unregistered firearm in violation of 26 U.S.C. § 5861(d). § 5861(d) makes it unlawful for any person "to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record." To lawfully possess the firearms identified by the NFA, the Act requires individuals to register their firearms in the NFRTR. 26 U.S.C. § 5841(b). The NFA further provides that "[a]ny person who violates or fails to comply . . . shall, upon conviction, be fined not more than $10,000, or be imprisoned not more than ten years, or both." 26 U.S.C. § 5871.

Jones provides a single page argument that § 5861(d) is unconstitutional when applying a *Bruen* analysis and provides no support beyond the threadbare analysis in a single page argument in his original motion and even thinner argument confined to four sentences in his reply. *See* Doc. 30 at 39-40; Doc. 50 at 59. It does not appear that Jones provides any dispute that he either possessed the weapon at issue or that the firearm falls within the definition provided by the NFA. However, even if he did, the Court would be required to accept, at this stage, the facts alleged in the Indictment as true. To the extent those facts are developed at trial, nothing in this ruling precludes a challenge to the underlying elements themselves. This opinion merely addresses the general proposition asserted by the Defendant that § 5861 is unconstitutional post-*Bruen*.

The Court finds that § 5861 does not specifically fall under protected activity covered under the Second Amendment. Rather, they fall under the National Firearms Act, 26 U.S.C § 5801-5872 (hereinafter "NFA"). In the case at hand, § 5845(b) provides:

> Machinegun. The term "machinegun" means any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot,

> without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machine gun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.

The indictment and superseding indictment both charge Jones with knowingly possessing a Glock firearm which was equipped with a machinegun-conversion device (Glock switch) that was not registered to him in the National Firearms Registration and Transfer Record. Defendant does not seemingly dispute that the NFA requires the registration of certain weapons under 26 U.S.C. § 5845, but rather argues generally that it violates the protections of the Second Amendment.

The Supreme Court previously stated that "[i]t is of course clear from the face of the Act that the NFA's object was to regulate certain weapons likely to be used for criminal purposes . . ." *United States v. Thompson/Center Arms Co.*, 504 U.S. 505, 517, 112 S. Ct. 2102, 119 L. Ed. 2d 308 (1992). Even *Bruen* and *Heller* recognized that certain weapons are not protected under the Second Amendment. In *Bruen* the Supreme Court quoted *Heller* and its note that "like most rights, the right secured by the Second Amendment is not unlimited." *Bruen*, 142 S. Ct. at 2128 (quoting *Heller*, 554 U.S. at 626); *see also Heller*, 554 U.S. at 625 ("[T]he Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes . . . ."). Indeed, by enacting the NFA, Congress took aim at certain weapons likely to be used for criminal purposes and not those typically used by law-abiding citizens for defense. *See* H.R. Rep. No. 1337, 83d Cong., 2d Sess., A395 (1954) (indicating "congressional intent to cover under the National Firearms Act only such modern and lethal weapons . . . as could be used readily and efficiently by criminals and gangsters").

Both *Miller* and *Heller* foreclose any challenge to the federal machinegun registration/ban. The Second Amendment simply does not extend to "dangerous and unusual weapons." *See*

*Heller*, 554 U.S. at 624; *Miller*, 307 U.S. at 182; *see also United States v. One (1) Palmetto State Armory PA-15 Machinegun Receiver/Frame, Unknown Caliber Serial No. LW001804*, 822 F.3d 136, 143 (3d Cir. 2016) ("[T]he Second Amendment does not protect the possession of machine guns. They are not in common use for lawful purposes."); *United States v. Fincher*, 538 F.3d 868, 874 (8th Cir. 2008) ("Machine guns are not in common use by law-abiding citizens for lawful purposes"); *United States v. Henry*, 688 F.3d 637, 640 (9th Cir. 2012) ("*Heller* did not specify the types of weapons that qualify as 'dangerous and unusual,' but the Court stated that it would be 'startling' for the Second Amendment to protect machine guns.") (citation omitted).

The Court cannot find that *Bruen* has overruled this point, but rather seems to emphasize it when it repeatedly references the protection of weapons in the common use by law-abiding citizens for self-defense. *Heller* was even more clear when it reaffirmed that "the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, such as short-barreled shotguns. That accords with the historical understanding of the scope of the right." *Heller*, 554 U.S. at 625. Consequently, "dangerous and unusual weapons" do not fall within the ambit of the Second Amendment. *Id*. at 625, 627.

Therefore, this Court joins with other courts who have found § 5861 does not require analysis under *Bruen* and that even post-*Bruen*, Second Amendment protections simply do not extend to machineguns (or in this case one that has been converted to one). *See, e.g., United States v. Simien*, --- F. Supp. 3d ---, 2023 U.S. Dist. LEXIS 23629, 2023 WL 1980487, at *8-9 (W.D. Tex. Feb. 10, 2023) (finding that certain weapons identified in the NFA are within the category of "dangerous and unusual" weapons that do not receive Second Amendment protection); *United States v. Holton*, 639 F. Supp. 3d 704 (N.D. Tex. 2022) (holding that § 5861(d) does not regulate protected conduct under the Second Amendment); *United States v. Hoover*, Crim. Act.

No. 3:21-CR-22(S3), 635 F. Supp. 3d 1305, 1325 (M.D. Fla. Oct. 18, 2022) (finding nothing in Bruen that "would undermine" the line of authority holding that the Second Amendment does not protect machineguns); *United States v. Woznichak*, Crim. Act. No. 21-242, 2023 U.S. Dist. LEXIS 199512, 2023 WL 7324442 (W.D. Pa. Nov. 7, 2023); *United States v. Sredl*, Crim. Act. No. 3:22-CR-71, 2023 U.S. Dist. LEXIS 89697, 2023 WL 3597715, at *3 (N.D. Ind. May 23, 2023) (observing that "weapons regulated under § 5861 are outside the Second Amendment's scope" and "Whatever changes [*Bruen*] brought to the Second Amendment landscape, inclusion of dangerous and unusual weapons in the Second Amendment right isn't one such change."); *United States v. Rush*, 2023 U.S. Dist. 12948, (S.D. Ill. Jan. 25, 2023) (finding that the § 5861 offenses charged do not infringe on Defendant's constitutional right to keep and bear arms as recognized under the Second Amendment); *see also Mock*, 75 F.4th at 596 (Higginson, J., dissenting) ("[T]he Supreme Court's more recent decision in *Bruen* left *Heller*'s dangerous-and-unusual carveout intact." (citing *Bruen*, 142 S. Ct. at 2128, 2143)); *cf. United States v. Kazmende*, Crim. Act. No. 1:22-cr-236, 2023 U.S. Dist. LEXIS 100040, *3, 2023 WL 3872209 (N.D. Ga. May 17, 2023) ("Because machineguns are dangerous and unusual weapons that are outside the protection of the Second Amendment, Section 922(o) is not unconstitutional.").

In sum, the Court finds that binding precent still holds because *Miller*, *Heller*, and *Bruen* still foreclose any challenge to the weapon registration at issue here.

### III.   CONCLUSION

For the reasons discussed here, the *Motion to Dismiss* (Doc. 30) is **DENIED**.

**DONE** and **ORDERED** this 3rd day of December 2023.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES DISTRICT JUDGE
